IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TROY BRAVE LLC D/B/A BRAVE FREIGHT**, | * | |
| | * | |
| *Plaintiff/Counter-Defendant,* | | |
| v. | * | Civil Case No: 1:22-cv-02409-JMC |
| **GRANTSVILLE TRUCK & TRAILER, LLC**, | * | |
| *Defendant/Counter-Plaintiff/Third Party Plaintiff,* | * | |
| | * | |
| v. | * | |
| **MEXICHEM SPECIALTY RESINS, INC.**, | * | |
| *Third Party Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Troy Brave LLC d/b/a/ Brave Freight ("Brave") filed the present action for detinue, declaratory relief, and conversion on September 21, 2022, against Defendant Grantsville Truck & Trailer, LLC ("Grantsville"). (ECF No. 1). Grantsville then filed a counterclaim against Brave on November 23, 2022 (ECF No. 14), before filing a third party complaint ("the Complaint") against Mexichem Specialty Resins, Inc. ("Mexichem") on that same day (ECF No. 15). Presently before the Court is Third Party Defendant Mexichem's Motion to Dismiss Grantsville's Complaint (the "Motion"). (ECF No. 41). The Court has considered the Motion, Grantsville's Opposition (ECF No. 48), and Mexichem's Reply (ECF No. 58). The Court finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Mexichem's Motion is GRANTED.

I.    BACKGROUND

Mexichem manufactures, handles, and sells vinyl resin production materials. (ECF No. 41-1 at p. 8).[1] Mexichem is a Delaware corporation with its principal place of business in Ohio, but also owns manufacturing sites in Pedricktown, New Jersey, and Henry, Illinois. *Id.* Regarding Maryland specifically, Mexichem asserts that it "serves a limited market in Maryland" consisting of two customers and roughly 0.2% of Mexichem's global sales. *Id.* Grantsville is a towing and recovery company. *Id.*

Mexichem contracted with Veritiv, a transportation broker, to obtain a carrier to ship Mexichem's cargo from Pedricktown to a purchaser in Cheswick, Pennsylvania. (ECF No. 15 at p. 4; ECF No. 41-1 at p. 8). Veritiv then arranged for Brave to transport Mexichem's cargo. (ECF No. 15 at p. 4). After picking up the cargo from Pedricktown, New Jersey, but before it was delivered to Cheswick, the driver hauling the cargo was involved in an accident on or about U.S. Route 40 in Maryland.[2] *Id.* at p. 2. Grantsville responded to the scene of the accident and recovered the wreckage totaling roughly forty thousand (40,000) pounds of cargo. *Id.* at p. 3. The cargo itself is property of Mexichem; the trailer transporting the cargo is owned or leased by Brave; and the driver transporting the cargo was employed by yet another company that also owned the tractor used to haul the trailer of cargo. *Id.* at p. 2; (ECF No. 45-1 at p. 3).

Grantsville made efforts to preserve the cargo and eventually recovered the tractor, trailer, and cargo involved in the wreck. (ECF No. 15 at p. 2). Grantsville then submitted an invoice for its services to Brave. *Id.* However, rather than paying the invoice, Brave filed the present

---

[1] When the Court cites to a particular page number or range, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

[2] The Court takes judicial notice of the fact that Cheswick is in Western Pennsylvania and Pedricktown is in Southern New Jersey, such that one could deliver freight between those locations without going into Maryland.

underlying suit against Grantsville. Grantsville in turn filed the Complaint against Mexichem, alleging that Mexichem (1) owes Grantsville for the services it provided under a theory of quantum meruit, and (2) breached an implied contract with Grantsville by virtue of Grantsville's services in clearing the wreckage. *Id.* at pp. 3–4. In response, Mexichem filed the pending Motion to Dismiss Grantsville's Complaint, asserting that (1) this Court cannot exercise personal jurisdiction over Mexichem; (2) this Court cannot exercise subject matter jurisdiction over Mexichem; and (3) the District of Maryland is not a proper venue to adjudicate the Complaint; or, in the alternative, (4) the Complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* (ECF No. 41-1).

## II.    STANDARD OF REVIEW

"A federal court generally may not rule on the merits of a case without first determining that it has subject matter jurisdiction." *Scapes v. McKimm*, No. CIV WDQ-09-2231, 2009 WL 4726613, at *1 (D. Md. Dec. 1, 2009). A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). Where a moving party contends that a plaintiff's complaint "simply fails to allege facts upon which subject matter jurisdiction can be found," the moving party should prevail "only if the jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 391 (D. Md. 2001) (internal quotations omitted).

In analyzing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the Court must determine whether the Plaintiff has made a *prima facie* showing of jurisdiction. *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). The requirement of making such a *prima facie* showing "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* In such an analysis, the plaintiff bears

the burden of demonstrating that the Court has jurisdiction over each defendant. *Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 811 (D. Md. 2010). In determining whether a plaintiff meets this burden, unlike motions made under Rule 12(b)(6), the scope of this Court's review is not limited to the pleadings, and the Court may appropriately consider affidavits submitted by the parties. *Hawkins,* 935 F.3d at 226. Nonetheless, the Court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Cleaning Auth., Inc.*, 739 F. Supp. 2d at 811 (quotation omitted) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). However, a court "need not 'credit conclusory allegations'" in determining whether a plaintiff has met his burden of making a *prima facie* showing of personal jurisdiction. *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 407 (D.S.C. 2012) (quoting *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)).

### III.    DISCUSSION

#### A. The Court has Subject Matter Jurisdiction Over the Complaint

The Court notes at the onset that Grantsville failed to abide by Federal Rule of Civil Procedure 8(a)(1) by including no statement or explanation as to the Court's jurisdiction over this action other than requesting judgment "in excess of Seventy-Five thousand dollars ($75,000)" in the final sentence of the Complaint. (ECF No. 15 at p. 5); *see* Fed. R. Civ. P. 8(a)(1). The Complaint includes no cause of action based on a federal right or statute, so the Court must look to whether the requirements of diversity jurisdiction are satisfied. District courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). A limited liability company's "citizenship for purposes of diversity jurisdiction turns not on its place of formation or principal place of business,

but on the citizenship of [the LLC's] members." *Travelers Indem. Co. of Am. v. Portal Healthcare Sols., LLC*, 644 F. App'x 245, 246 (4th Cir. 2016).  In its Complaint, Grantsville fails to include a jurisdictional statement and makes no assertions as to subject matter jurisdiction other than requesting judgment in an amount that exceeds the amount in controversy requirement.  *See MB Realty Grp., Inc. v. Dolgencorp, LLC*, No. GJH-19-2300, 2021 WL 2457151, at *4 (D. Md. Jun. 16, 2021) ("Under the well-pleaded complaint rule, the facts showing the existence of subject matter jurisdiction must be affirmatively alleged in the complaint.  A court is to presume, therefore, that a case lies *outside* its limited jurisdiction unless and until jurisdiction has been shown to be proper.") (internal quotation omitted) (emphasis in original).  Such deficiencies alone have been sufficient in other cases to form the basis for dismissing a complaint.  *See, e.g.*, *Keralink Int'l, Inc. v. Stradis Healthcare, LLC*, No. CV CCB-18-2013, 2020 WL 2490110, at *3 (D. Md. May 14, 2020) (noting that the Court may dismiss a complaint for failure to comply with Rule 8(a)(1) where, in the absence of a jurisdictional statement, the pleading does not contain factual assertions that would establish jurisdiction if proved); *Tanguma v. Kardashian*, No. CIV-18-948-G, 2018 WL 5018480, at *2 (W.D. Okla. Oct. 16, 2018) (same).

However, "This Court has supplemental jurisdiction 'over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *LSR, Inc. v. Satellite Restaurants Inc. Crabcake Factory USA*, No. CV RDB-17-3722, 2018 WL 4216755, at *2 (D. Md. Sept. 5, 2018) (quoting 28 U.S.C. § 1367(a)).  In the specific context of third party complaints, supplemental jurisdiction exists over such complaints when they "clearly form part of the same case or controversy as the claims originally posited in the case" and "the Court has diversity jurisdiction over" the underlying complaint.  *Hartford Fire Ins. Co. v. Harborview Marina & Yacht*

*Club Cmty. Ass'n, Inc.*, No. CV PJM 16-769, 2018 WL 656437, at *5 (D. Md. Feb. 1, 2018). Here, the Court has diversity jurisdiction over the underlying complaint because Brave set forth a controversy in excess of $75,000 and there exists diversity of citizenship between Brave and Grantsville. *See* (ECF No. 1). Grantsville's Complaint also arises from the same facts giving rise to Brave's complaint, making it part of the same case or controversy for purposes of supplemental jurisdiction. *See O'Bannon v. Friedman's, Inc.*, 437 F. Supp. 2d 490, 493 (D. Md. 2006) ("[S]upplemental jurisdiction may be found where the claims 'revolve around a central fact pattern.'") (quoting *White v. Cnty. of Newberry*, 985 F.2d 168, 171 (4th Cir. 1993)). Notwithstanding the Court's ability to exercise supplemental jurisdiction over Grantsville's Complaint, though, the Court still lacks personal jurisdiction over Mexichem as discussed below.

### B. This Court Lacks Personal Jurisdiction Over Mexichem

Mexichem also argues that it is not subject to the personal jurisdiction of this Court regarding the claims lodged in the Complaint. "A court may not exercise personal jurisdiction over a non-resident defendant unless the activities of that individual are sufficient to subject the party to that forum's long arm statute" and the assertion of personal jurisdiction is permitted by the Due Process Clause of the Fourteenth Amendment. *Screen*, 303 F. Supp. 2d at 688. Maryland's long arm statute authorizes the exercise of personal jurisdiction to the extent it comports with the Fourteenth Amendment. *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (D. Md. 2002). Thus, the Court must determine whether personal jurisdiction exists under one of the two types described by the Supreme Court: general or specific.

The relevant inquiry to establish *general* personal jurisdiction over a corporation is "whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)

(quotation omitted); *see also id.* at 137 ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (quotation omitted). Outside of the paradigmatic examples of state of incorporation and location of headquarters noted in *Daimler*, the Supreme Court has rarely found general personal jurisdiction to exist over a corporation. *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 925 (2011) (noting that to that point, the Court had only found such jurisdiction in one case, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), a case where the corporation effectively moved its headquarters to the forum state on a temporary basis during World War II). Thus, establishing general personal jurisdiction over a corporate defendant outside of its state of incorporation or headquarters location under the "essentially at home" standard based on its contacts with a forum may properly be regarded as a jurisdictional great white whale.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). A defendant is subject to specific personal jurisdiction in a forum state when it takes "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A plaintiff must show that "the defendant deliberately 'reached out beyond' its home—by, for example 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). However, there is also a second requirement, namely, that the cause of action arises from or relates to such availment. That is, to establish specific personal jurisdiction, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum. *See Ford Motor Co.*, 141 S. Ct.

at 1025 ("The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum") (quotation omitted).

This Court cannot exercise personal jurisdiction over Mexichem. As for general jurisdiction, Mexichem is neither incorporated in Maryland (Delaware) nor does it have its principal place of business in Maryland (Ohio). (ECF No. 41-1 at pp. 8, 10). The inquiry then becomes one of specific jurisdiction: does Mexichem's contracting with broker Veritiv (incorporated in Delaware with its principal place of business in Georgia), who then selected Brave (a Florida corporation with its principal place of business in Texas), which was ultimately involved in an accident in Maryland while transporting Mexichem's cargo from New Jersey to Pennsylvania, establish minimum contacts between Mexichem and Maryland and a sufficient nexus to the cause of action to permit the exercise of specific personal jurisdiction in Maryland over Mexichem? (ECF No. 1 at p. 1).[3] The Court finds that it does not. Mexichem's purposeful contacts, as it relates to the Complaint specifically, were between New Jersey, where the cargo originated, Pennsylvania, where Mexichem sought to have the cargo delivered to the purchaser, and Delaware/Georgia where Veritiv is incorporated and headquartered. Notwithstanding that Mexichem conducts a small portion of its business in Maryland generally, the Complaint does not arise from those contacts and none of the above purposeful contacts directly involve Maryland.

Nor is the Complaint based on other activities targeted toward either of the two Mexichem customers located in Maryland or any other business Mexichem conducts in Maryland. Further,

---

[3] Although not described in the underlying Complaint in the case *sub judice* or the third party complaint at issue, the State of Maryland's Department of Assessments & Taxation indicates that Veritiv [Operating Company] is incorporated in Delaware with its principal place of business in Atlanta, Georgia. *See Veritiv Operating Company: F02039576*, MD. DEP'T OF ASSESSMENTS & TAX'N, http://egov.maryland.gov/BusinessExpress/EntitySearch (choose "Department ID" from dropdown; then enter "F02039576"; then click "search"); *see also Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) ("[A] court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.") (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

Mexichem did not have control over the route or method by which Brave, or its independently employed driver, transported the cargo to Pennsylvania, thereby making the driver's conduct in Maryland not of Mexichem's "own choice."[4]  *Ford Motor Co.*, 141 S. Ct. at 1025; s*ee also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (requiring that "the defendant has *purposefully directed his activities at the residents of the forum*" for specific jurisdiction to be proper) (emphasis added).  In other words, Mexichem did not direct any of its activities at the residents or state of Maryland in connection with Mexichem transporting its cargo, which serves as the basis of Grantsville's Complaint.  So although Mexichem may have some level of contacts with Maryland *outside* the actions giving rise to Grantsville's Complaint, this Court cannot conclude that general or specific personal jurisdiction may be appropriately exercised over Mexichem.

Grantsville's arguments to the contrary are unpersuasive.  Grantsville contends that "The relevant question here is whether Mexichem's actions satisfy either the first prong of the test [elaborated in Md. Cts. & Jud. Code Ann. § 6-103(b)], that is whether it transacts business in the state."  (ECF No. 48-1 at p. 2).  This argument misses the mark, though, because the inquiry is not as broad as Grantsville suggests.  This Court cannot assess whether personal jurisdiction is proper over Mexichem simply by virtue of Mexichem conducting business in Maryland.  Rather, the Maryland long arm statute expressly provides that, "If jurisdiction over a person is based solely upon this section, he may be sued *only* on a cause of action *arising from any act enumerated in this section*" such as "Transact[ing] any business or perform[ing] any character of work or service in the State." Md. Cts. & Jud. Code Ann. § 6-103(a)-(b) (emphasis added).  Grantsville's cause of action did not arise from Mexichem transacting business in Maryland; it arose from Mexichem transacting business between New Jersey and Pennsylvania through organizations associated with

---

[4] As noted above, the freight in question could have logically travelled from New Jersey to Mexichem's customer in Pennsylvania without ever entering Maryland.

Delaware, Georgia, Florida, and Texas, which involved an accident wholly unrelated to Mexichem's contacts with Maryland over which Mexichem had no control.

Grantsville additionally requests "time to conduct a limited discovery period, solely focused on Mexichem's contacts with the state of Maryland." (ECF No. 48-1 at p. 2). "In considering a motion to dismiss for lack of personal jurisdiction, the Court may, in its discretion, postpone the decision and permit discovery." *Plan 3, Inc. v. GE Grp. Adm'rs, Inc.*, No. CV AW-05-1581, 2005 WL 8175573, at *5 (D. Md. Feb. 21, 2005). The Court need not grant such a request where the non-moving party "has failed to set forth any specific facts that would justify the assertion of personal jurisdiction." *Id.* at *6. The only specific facts that Grantsville sets forth regarding Mexichem being subject to the personal jurisdiction of this Court is that "the accident took place in the State of Maryland and Mexichem's property was in the State as it was conducting business in the state." (ECF No. 48-1 at p. 2). But as explained above, Mexichem was not purposefully conducting business in Maryland with regards to Grantsville's Complaint and Mexichem did not purposefully take action to place its cargo in Maryland. As such, Grantsville has "failed to set forth any specific facts that would justify the assertion of personal jurisdiction" and the Court declines to permit a limited discovery period as Grantsville requests.

## IV.     CONCLUSION

For the foregoing reasons, Mexichem's Motion to Dismiss Grantsville's third party complaint (ECF No. 41) is GRANTED on the grounds that this Court may not properly exercise personal jurisdiction over Mexichem. The Court therefore not need address the additional, alternate theories for dismissal set forth by Mexichem. *See, e.g.*, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 435–36 (2007) ("If . . . a court can readily determine that it lacks

jurisdiction over the cause *or the defendant*, the proper course would be to dismiss on that ground.") (emphasis added).   A separate order follows.


Date: <u>September 14, 2023</u>                                    _____/s/_____
                                                                          J. Mark Coulson
                                                                          United States Magistrate Judge