IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TROY BRAVE, LLC D/B/A BRAVE FREIGHT**, | * |
| | * |
| *Plaintiff/Counter-Defendant,* | |
| v. | *   Civil Case No: 1:22-cv-02409-JMC |
| **GRANTSVILLE TRUCK & TRAILER, LLC**, | * |
| | |
| *Defendant/Counter-Plaintiff.* | |
| | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Troy Brave, LLC d/b/a/ Brave Freight ("Brave") filed the present action for detinue, declaratory relief, and conversion on September 21, 2022, against Defendant Grantsville Truck & Trailer, LLC ("Grantsville"). (ECF No. 1). Grantsville then filed a Counter Complaint against Brave on November 23, 2022 (ECF No. 14), before filing a third party complaint against Mexichem Specialty Resins, Inc. ("Mexichem") that same day (ECF No. 15). The Court previously dismissed Grantsville's third party complaint. *See Troy Brave, LLC d/b/a/ Brave Freight v. Grantsville Truck & Trailer, LLC*, No. 1:22-CV-02409-JMC, 2023 WL 5984126 (D. Md. Sept. 14, 2023). Presently before the Court is Brave's Motion for Summary Judgment (the "Motion") in its favor on all Counts of its Complaint as well as on all Counts of Grantsville's Counter Complaint. (ECF No. 45). The Court has considered the Motion, Grantsville's Opposition (ECF No. 59), and Brave's Reply (ECF No. 60). The Court finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Brave's Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.  **BACKGROUND**

Brave is a Florida limited liability company that provides motor carrier transportation services. (ECF No. 45-1 at p. 4).[1] Grantsville is a Maryland limited liability company that provides towing, recovery, storage, and related services. *Id.* at pp. 4–5. A freight broker named Veritiv selected Brave to transport a shipment of plastic resin in early 2022 on behalf of Mexichem. *Id.* at p. 5. Brave then hired Jose Marti amz Services, Inc. ("Marti") to transport the cargo via trailer to western Pennsylvania. *Id.* Brave leased the trailer hauling the cargo from a third party, but the truck hauling the trailer is owned by Marti. *Id.*

On April 19, 2022, Marti was traveling on U.S. Route 40 near the town of Accident, Maryland, when he was involved in an accident. *Id.* at p. 6. The Maryland State Police ("MSP") responded to the scene of the accident and, thereafter, contacted Grantsville's owner, Jay Miller, and manager, George Short, to assist with clearing the scene. *Id.* According to Brave, Miller and Short spoke with Marti, who informed the former that Marti was hauling the cargo on behalf of Brave and subsequently provided the contact information for Brave's security director at the time. *Id.* Marti also provided Grantsville with a Carrier Rate Confirmation document, which identified Brave and its owner, Troy Bravenboer, along with relevant contact information. *Id.* Grantsville successfully recovered the cargo the following day on April 20, 2022, and towed Marti's truck, Brave's leased trailer, and the cargo to Grantsville's yard where Short reviewed the Carrier Rate Confirmation document and contacted Brave for the first time regarding the accident and recovery. (ECF No. 45, Ex. 2 at pp. 19–21).[2]

---

[1] When the Court cites to a particular page number or range, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

[2] When the Court cites to a particular page number or range of pages in Exhibit 2, the Court is referring to the page numbers located in the top right of the synthesized deposition transcript provided by Plaintiff.

Grantsville sent Brave an initial invoice for $46,820.50 for its recovery efforts. (ECF No. 45-3 at p. 4). Bravenboer objected to the charges but nevertheless submitted an insurance claim, which resulted in Brave's insurer paying Grantsville $20,000.00 on or about May 6, 2022. *Id.* Bravenboer then demanded that Grantsville release the trailer and cargo to Brave, but Grantsville refused on the ground that it would retain the trailer and cargo until the invoice was paid in full. (ECF No. 45-1 at p. 8). Grantsville also insisted on payment for accruing rental and storage charges, which were reflected in an updated invoice that Grantsville sent to Brave detailing at least 94 days of storage fees each for Marti's truck, the trailer, and the cargo. *Id.* at p. 9. Unable to resolve the possession and invoice disputes, Brave filed the present action for detinue, declaratory relief, and conversion. (ECF No. 1). Grantsville then filed a Counter Complaint against Brave for quantum meruit, violation of the Code of Maryland Regulations ("COMAR") § 11.07.03.16, and breach of contract. (ECF No. 17). Brave now asks this Court to enter summary judgment in favor of Brave on all counts alleged in their Complaint as well as against Grantsville on all Counts in Grantsville's Counter Complaint. (ECF No. 45).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"

*Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III.   DISCUSSION

#### A. Brave's Claim for Declaratory Relief

Brave argues first that this Court should "enter an Order declaring that [Grantsville] does not possess a lien" on the trailer or cargo. (ECF No. 45-1 at p. 16). "[I]n the absence of some common law or statutory lien authorizing it to retain possession of the property until its charges [are] paid, [a possessor of property is] obligated to restore the property to its owner when demand was made for its return . . . and there [is] no right to charge for storage of the property beyond that date." *T.R. Ltd. v. Lee*, 55 Md. App. 629, 634 (1983).[3] The parties dispute whether such a statutory lien exists permitting Grantsville lawful possession of the trailer and cargo while its invoice is

---

[3] "Federal courts sitting in diversity apply the conflict of law rules prevailing in the states in which they sit." *Havtech, LLC v. AAON Inc.*, No. SAG-22-00453, 2022 WL 1213476, at *4 (D. Md. Apr. 25, 2022). Regarding tort claims under Maryland's choice of law rules, "the substantive tort law of the state where the wrong occurs governs." *Haunch v. Connor*, 295 Md. 120, 123 (1983). Thus, the Court applies the substantive tort law of Maryland because the material events giving rise to both the Complaint and Counter Complaint occurred in Maryland.

pending. Specifically, Grantsville argues that it has a "garageman's lien" over the property in question. (ECF No. 59 at p. 5). Md. Code Ann., Com. Law, § 16-202(c)(1) provides that

> (1) Any person who, with the consent of the owner, has custody of a motor vehicle and who, at the request of the owner, provides a service to or materials for the motor vehicle, has a lien on the motor vehicle for any charge incurred for any: (i) Repair or rebuilding; (ii) Storage; or (iii) tires or other parts or accessories[, and] (2) A lien is created under this subsection when any charges set our under paragraph (1) . . . are incurred.

Section 16-203(a) further states that "The lienor may retain possession of the property subject to the lien until: (1) the charges which give rise to the lien are paid; or (2) The lien is otherwise discharged in accordance with this subtitle." Section 16-101(c) clarifies that "'Owner' includes a person lawfully in possession."

Of particular importance here, "'Motor vehicle has the meaning stated in Title 11 of the Transportation Article," which is a "vehicle that: (i) is self-propelled or propellered by electric power obtained from overhead electrical wires; and (ii) is not operated on rails." *See* Md. Code Ann., Com. Law, § 16-201(f)(1); Md. Code Ann., Transp. § 11-135(a)(1). The Maryland Court of Appeals[4] previously determined that a trailer does not fall within the meaning of a "motor vehicle" when determining the existence of a garageman's lien. *See Patapsco Trailer Serv. & Sales, Inc. v. Eastern Freightways, Inc.*, 271 Md. 558, 563–64 (1974).[5] So although the parties argue at length regarding whether Marti had the requisite level of authority to consent to Grantsville's custody of the trailer and cargo, the Court need not analyze the issue of authority at this juncture because there can be no genuine dispute that the trailer and cargo are not "motor

---

[4] The Court of Appeals is the highest appellate court in the State of Maryland, which was recently renamed the Supreme Court of Maryland by state constitutional referenda. *See Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland*, MD. JUDICIARY, https://www.courts.state.md.us/media/news/2022/pr20221214 (Dec. 14, 2022).

[5] Although this finding in *Patapsco* was based on an interpretation of Md. Code Ann., Transp. § 11-135(a)(1)'s predecessor, the previous definition of motor vehicle under Maryland law was substantially similar, even identically defining a motor vehicle as "a vehicle which is self-propelled." *Patapsco*, 271 Md. at 563.

vehicles" and therefore not capable of being subject to a garageman's lien by Grantsville. Accordingly, the Court **GRANTS** summary judgment in favor of Brave on Count II of its Complaint, namely, that Grantsville does not possess a garageman's lien on the trailer and cargo at issue. Grantsville is therefore not entitled to past or present storage costs for the trailer or cargo after Brave demanded the return of the trailer and cargo, which occurred on or about May 6, 2022. *Lee*, 55 Md. App. at 634; (ECF No. 45-3 at p. 4).[6]

### B. Brave's Claim for Detinue

Brave next urges this Court to enter judgment against Grantsville on Brave's detinue claim. "Under Maryland law, 'detinue lies for the recovery of personal chattels unjustly detained by one who acquired possession of them either lawfully or unlawfully, or the value of them if they cannot be regained in specie.'" *Pan 4 Am., LLC v. Tito & Tita Food Truck, LLC*, No. DLB-21-401, 2022 WL 622234, at *10 (D. Md. Mar. 3, 2022) (citing *Durst v. Durst*, 225 Md. 175, 176 (1961)). Codified by Maryland Rule 12-602, a complaint for detinue must contain: "(1) a description of the property claimed and an allegation of its value, (2) an allegation that the defendant unjustly detains the property, (3) a claim of return of the property or payment of its value, and (4) any claim for damages to the property or for its detention." Md. R. 12-602(c); *Pan 4 Am., LLC*, 2022 WL 622234 at *10. To succeed in establishing a cause of action for detinue, "the plaintiff must prove by a preponderance of the evidence entitlement to a final judgment of possession; any damages claimed for the detention of the property; and, as to property not received, entitlement to damages for the value of that property." *Williamson v. Parker*, No. 426, Sept. Term, 2020, 2021 WL 2982920, at *7 (Md. Ct. Spec. App. July 15, 2021).

---

[6] Grantsville concedes that Brave did, in fact, demand return of the trailer and cargo. (ECF No. 59 at pp. 5–6). Grantsville also does not contest the date of demand set forth by Brave in their Motion and accompanying exhibits, so the fact that Brave demanded return of the trailer and cargo on or about May 6, 2022, is undisputed for the purpose of the Motion. *See* Fed. R. Civ. P. 56(e)(2).

In its Opposition, Grantsville argues that Brave neither "had or has the right to [the truck, trailer, or cargo] to demand release" because the truck was owned by Marti, the trailer was owned by a third party, and the cargo was owned by Mexichem with Brave producing "no powers of attorney with its Motion . . . ." (ECF No. 59 at p. 6). It is unclear given the format of Grantsville's Opposition whether this argument is in response to Brave's claim for declaratory relief, detinue, or conversion. But the Court has already determined that Grantsville possesses no garageman's lien over the trailer and cargo, regardless of its ownership, and an action for detinue in Maryland does not require that the party claiming return of property or payment of its value have absolute ownership of that property. Rather, Md. Rule 12-602 allows for any "person claiming the right to possession of personal property [to] file an action under this Rule." Md. Rule 12-602(a)(1).

As the Court has already determined that Grantsville unjustly detained the trailer and cargo because it could not validly exercise a garageman's lien over the property, the Court looks to whether there are any genuine disputes of material fact regarding Brave's entitlement to a judgment in its favor for detinue. Viewing the facts and all inferences in favor of Grantsville, the Court finds that summary judgment against Grantsville on this charge is appropriate. First, both Brave's initial Complaint and its Motion describe the property at issue and allege the value of that property. *See* (ECF No. 1 at pp. 2–6; ECF No. 45-1 at p. 5). Nowhere in Grantsville's Opposition does it contest the description or value of the trailer and cargo. *See generally* (ECF No. 59); Fed. R. Civ. P. 56(e)(2). Second, Brave alleges in both its Complaint and Motion that Grantsville unjustly detained the trailer and cargo. (ECF No. 1 at pp. 5–6; ECF No. 45-1 at pp. 20–21). Grantsville contests that the detention of the trailer and cargo was lawful because Grantsville possessed a garageman's lien over the property, but the Court has already found this argument invalid as a matter of law and therefore there is no genuine dispute of material fact that Grantsville unjustly

7

retained possession of the trailer and cargo after it refused to return the property following Brave's demands. Finally, Brave asserted a claim for the value of the trailer and cargo as well as damages resulting from Grantsville's refusal to return the property, including rental charges, insurance payments, and lost profits. Grantsville does not contest these assertions other than arguing that Brave failed to mitigate its damages under Md. Code Ann., Com. Law § 16-206, which is inapplicable here because it applies only to "owner[s] of property subject to a lien." Accordingly, summary judgment is **GRANTED** in favor of Brave with regard to liability for detinue under Count I.

### C. Brave's Claim for Conversion

Lastly with regard to Brave's Complaint, Brave seeks summary judgment against Grantsville on Brave's conversion claim. "Conversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind." *Dacars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 262 (2004). The physical act may be summarized as "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Investment Corp. v. Jasen*, 354 Md. 547, 560 (1999). This can be established when a tortfeasor either "initially acquir[es] the property or . . . retain[s] it longer than the rightful possessor permits." *Darcars*, 379 Md. at 261–62. Regarding intent:

> A wide range of different states of mind qualify. At a minimum, a defendant liable of conversion must have 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.' The defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property.

*Id.* at 262–63 (quoting *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 414 (1985)).

Here, there is no genuine dispute of material fact that Grantsville is liable for conversion. Beginning with the physical act, it is undisputed that Grantsville exercised dominion over the

personal property of another—the trailer and cargo—in direct denial of Brave's rights to possess the trailer it was leasing and use that trailer to haul the cargo it was entrusted to deliver. Moreover, Grantsville had a clear intent to exercise control over the trailer and cargo because it refused to return the property despite several demands from Brave. Providing Grantsville with the benefit of the doubt as to whether it believed in good faith that it possessed a garageman's lien over the property does not aid Grantsville because it nevertheless intended to exert control over the trailer and cargo. *Id.* Grantsville does not deny in its Opposition that it intended to, and in fact did, exercise control over the trailer or cargo in light of Brave's repeated demands for their return. In actuality, Grantsville never mentions the word "conversion" in its Opposition or argues substantively that there is a genuine dispute of fact whether it committed conversion other than asserting throughout its Opposition that it has a garageman's lien over the property. As such, summary judgment in favor of Brave against Grantsville in Count III regarding Grantsville's liability for conversion is **GRANTED**.

### D.  Grantsville's Counter Claim for Breach of Contract

Turning now to Brave's request for summary judgment against Grantsville as to all Counts asserted by Grantsville in its Counter Complaint, Brave contends that Grantsville may not prevail on its breach of contract claim as a matter of law. (ECF No. 45-1 at p. 27). "To prove breach, a plaintiff must simply show that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *WSC/2005 LLC v. Trio Ventures Assocs.*, 460 Md. 244, 265 (2018) (quotation omitted). Brave contends that no such contractual duty existed because "the undisputed facts establish that the only person who communicated with [Grantsville] at all prior to the completion of the recovery and towing work . . . was [Marti], who does not have authority to bind Brave Freight to a contract." (ECF No. 45-1 at p. 28). However, even assuming *arguendo*

9

that Marti did not have the express or implied authority to engage Grantsville for its recovery efforts, Grantsville has raised a genuine dispute as to whether Marti possessed the apparent authority to do so.

"Apparent agency is an equitable doctrine, whereby a principal is held responsible for the acts of another because the principal, by its words or conduct, has represented that an agency relationship existed between the apparent principal and its apparent agent." *Bradford v. Jai Med. Sys. Managed Care Org., Inc.*, 439 Md. 2, 16 (2014). The party asserting the existence of apparent authority bears the burden of proving so. *Atlantic Richfield Co. v. Sybert*, 51 Md. App. 74, 84 (1982). Thus,

> Apparent authority may arise when the actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal assents to the acts of the agent . . . The action or manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the action or manifestation of authority must be reasonable.

*Id.* Here, Grantsville set forth evidence that the vehicle Marti used to haul the trailer and cargo bore the name "Brave Freight" on its door with Brave's Department of Transportation identification number immediately below it. (ECF No. 59 at p. 3; ECF No. 59-1 at p. 1). This is especially noteworthy considering Brave's assertion that Marti owns the truck. (ECF No. 1 at p. 2; ECF No. 45-1 at p. 5). Brave also concedes in its Motion that Marti identified Brave as the company he was driving the trailer and cargo for when asked by Grantsville's owner and manager at the scene of the accident, and that Brave provided contact information for additional Brave employees such as Bravenboar in the Carrier Rate Confirmation document presented to third parties like Grantsville. (ECF No. 45-1 at pp. 6–7). Viewing these facts in the light most favorable to Grantsville, the Court cannot conclude that, as a matter of law, Marti did not have apparent authority on behalf of Brave or that Grantsville unreasonably relied on these manifestations by

10

Brave that Marti was an agent of Brave and thereby able to enter into agreements on its behalf. Accordingly, Brave's Motion with regard to Count III of Grantsville's Counter Complaint for breach of contract is **DENIED**.

### E.  Grantsville's Counter Claim for Quantum Meruit

Assuming that no contract existed between the parties, Brave next contends that Grantsville may not prevail on its quantum meruit claim as a matter of law. (ECF No. 45-1 at pp. 28–31). "*Quantum meruit* refers to either an implied-in-fact contractual duty or an implied in law (quasi-contractual) duty requiring compensation for services rendered." *Mogavero v. Silverstein*, 142 Md. App. 259, 274 (2002). "The distinction between these two forms of *quantum meruit* is important, as the two claims require distinct remedies." *Id.* at 275. Grantsville does not specify which form it is pursuing, but bases its Opposition on this point on a theory of "unjust enrichment" so the Court will treat Grantsville's claim of quantum meruit as one of quasi-contractual, implied in law. *See* (ECF No. 59 at p. 7); *Truland Service Corp. v. McBride Elec., Inc.*, No. CIV.A ALH-10-03445, 2011 WL 1599543, at *9 (D. Md. Apr. 27, 2011) ("A quantum meruit claim based on a quasi contract (i.e., implied in law) is the same as a claim of unjust enrichment.") (citing *Mohiuddin v. Drs. Billing & Mgmt. Sols., Inc.*, 196 Md. App. 439, 447 (2010)).

"A quasi contract (contract implied in law) . . . involves no assent between the parties, no meeting of the minds." *Mogavero*, 142 Md. App. at 275. Rather, such a contract arises where "the law implies a promise on the part of the defendant to pay a particular debt. Thus, the implied in law contract . . . is indeed no contract at all, it is simply a rule of law that requires restitution to the plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense." *Id.*  Three elements must be proven to prevail on a claim of unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant

11

of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Mohiuddin*, 196 Md. App. at 449; *see also Sanders v. Mueller*, 133 F. App'x 37, 42 n.3 (4th Cir. 2005) ("Maryland law distinguishes between two types of quantum meruit claims, one based on an implied in fact contract (usually designated as quantum meruit) and the other based on an implied-in-law contract (usually designated as unjust enrichment).").

Brave argues that Grantsville cannot satisfy element (2) because "it is undisputed that Brave Freight did not know of, and could not have known of, that benefit until it had already been 'conferred'" by Grantsville. (ECF No. 45-1 at p. 30). Grantsville counters that it is particularly appropriate to uphold quantum meruit claims in the context of shipping cases where the benefit is not learned until after its conferral based on *Superior Towing & Transportation, LLC v. J.B. Hunt Transportation, Inc.*, No. 321CV00900PGSLHG, 2021 WL 4482824 (D.N.J. Sept. 30, 2021). The facts of *Superior* are remarkably similar to the case *sub judice*. In *Superior*, a corporation named Crown Cork required a shipment of lids to be transported from Virginia to New Jersey, just as Mexichem required the shipment of resin from New Jersey to Pennsylvania. *Id.* at *1. Crown Cork hired Hunt to transport the lids, who in turn engaged a trucking company, M&C Express, to transport the lids, just as Mexichem hired Veritiv, who in turn engaged Brave to transport the resin, who then found Marti to haul the resin. *Id.* The M&C Express driver was involved in a car accident en route to the delivery location, just as Marti was. *Id.* The New Jersey State Police responded and ultimately deployed Superior Towing to clear the wreckage, just as the MSP responded to Marti's accident and ultimately deployed Grantsville to clear the wreckage. *Id.* Superior was not paid for its services and filed suit against M&C express under a theory of quantum meruit, just as Grantsville was not paid for its services and filed a countersuit against

Brave. *Id.* The court ultimately found that these facts sufficiently supported an action for quantum meruit, fully taking into account the fact that "M&C Express was later notified of Plaintiff's services and sent an invoice for the assorted charges." *Id.* at *3.

Brave urges this Court not to conclude as the *Superior* court did because (1) the dispositive motion at issue in *Superior* was a motion to dismiss under Rule 12(b)(6) rather than a motion for summary judgment under Rule 56; and (2) the elements of a quantum meruit claim in New Jersey are inapposite to those of a quantum meruit claim in Maryland. *See* (ECF No. 60 at p. 14); *Superior*, 2021 WL 4482824 at *3 (describing the elements of quantum meruit in New Jersey). Brave is correct on both grounds. However, Brave's argument cuts both ways, as it also relies heavily on caselaw analyzing quantum meruit claims in the motion to dismiss context, the implied-in-fact contract context, or both. *See generally, e.g.*, *Truland Serv. Corp.*, 2011 WL 1599543. Regardless, this Court still finds *Superior* persuasive on this point. Maryland courts have previously opined that a defendant need not necessarily have contemporaneous knowledge of the benefit conferred unto them in determining the sufficiency of a quantum meruit claim. *See, e.g.*, *Amaya v. DGS Constr., LLC*, No. CV TDC-16-3350, 2022 WL 204773, at *3 (D. Md. Jan. 21, 2022), *aff'd*, No. 22-1189, 2023 WL 3034326 (4th Cir. Apr. 21, 2023) ("On the second element, whether the defendant had an appreciation or knowledge of the benefit, the defendant need not have the knowledge of the benefit precisely at the time it was received."); *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 301 (2007) ("If a plaintiff is mistaken as to the duties or rights that he or she owes another and 'because of his mistake confers a benefit upon another, that [plaintiff] is often entitled to recover the value of that benefit, in spite of the fact that the recipient was given no opportunity to decline it.'") (quoting DOBBS, LAW OF REMEDIES § 4.9 (2d ed. 1993)); *see also Jackson v. 2109 Brandywine, LLC*, 180 Md. App. 535, 575 (2008) ("A person who receives a

13

benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner.").

The Court also rejects Brave's assertion that, even if element (2) is satisfied, element (3) cannot be as a matter of law because Grantsville should have contacted Bravenboer pursuant to the Carrier Rate Confirmation document produced by Marti the day of the accident "to obtain consent and to ascertain the scope of Mr. Marti's authority." (ECF No. 45-1 at p. 31). It would be implausible for Brave to decline to consent to having its overturned trailer cleared from an active roadway at the directive of the MSP. At some point in time following the accident a towing service would necessarily have to clear the wreckage, and it is certainly foreseeable that hiring a transportation company to haul cargo could result in the individual hauling that cargo to become involved in an accident which would require clean-up efforts similar to that conducted by Grantsville. *See Everhart v. Miles*, 47 Md. App. 131, 137–38 (1980) (affirming unjust enrichment judgment for plaintiff despite argument that the "benefits in question were thrust upon" the defendant in part because the plaintiff's actions were "not strictly voluntary on their part"); *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md. App. 766, 774 (1984) (noting that unjust enrichment may apply "even though [the defendant] may have received those benefits quite honestly in the first instance"); *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 157 (2000) (recognizing that recovery for unjust enrichment is "not limited to situations in which the defendant has acquired a benefit by wrongful means"). Accordingly, the Court cannot conclude as a matter of law that there is no genuine dispute of material fact regarding whether Grantsville can establish a claim for quantum meruit (assuming no contract existed that was subsequently breached), and Brave's motion for summary judgment on Count I of Grantsville's Counter Complaint is therefore **DENIED**.

### F. Grantsville's Counter Claim for a Statutory/Regulatory Contract

Finally, Brave seeks summary judgment against Grantsville on Grantsville's counterclaim that Brave is obligated to repay Grantsville by operation of COMAR § 11.07.03.16. Specifically, Brave argues that COMAR § 11.07.03.16 is inapplicable because Grantsville cannot satisfy the requirement of being a "permittee" as required by that section. *See* COMAR § 11.07.03.16. Brave is correct because there is no indication in the record that Grantsville possessed the required permit by the Chief of Police or that the property was on Maryland Transportation Authority land when it was towed. *See Crete Carrier Corp. v. Sullivan & Sons, Inc.,* No. ELH-21-328, 2021 WL 2685253, at *7 (D. Md. June 30, 2021). Nevertheless, Grantsville chose not to address these assertions by Brave, so the Court deems them as unopposed for the purpose of this Motion. *See* Fed. R. Civ. P. 56(e)(2). As such, Brave's Motion is **GRANTED** to the extent that Grantsville cannot, as a matter of law, pursue a claim under COMAR § 11.07.03.16 under Count II of the Counter Complaint.

### G. Damages

With the above findings in mind, the Court must now determine whether Brave is entitled to any damages as a matter of law. Grantsville's Opposition does not specifically dispute any of the categories, amounts, or calculations of damages claimed and supported by Brave in its Motion. *See generally* (ECF No. 59). Rather, Grantsville argues more broadly that Brave failed to mitigate its damages because Brave (1) failed to attempt to buy or lease additional trailers to offset its losses

and (2) failed to abide by Md. Code Ann., Com. Law § 16-206. (ECF No. 59 at pp. 6–10).[7] As an initial matter, "the mitigation of damages doctrine is '[t]he principle requiring a plaintiff, after an injury or breach of contract, to use ordinary care to alleviate the effects of the injury or breach. If the defendant can show that the plaintiff failed to mitigate damages, the plaintiff's recovery may be reduced.'" *Ultimate Title, LLC v. Ladd*, No. 1202, Sept. term, 2016, 2018 WL 3388407, at *12 (Md. Ct. Spec. App. July 31, 2018) (quoting *Cave v. Elliott*, 190 Md. App. 65, 96 (2010)). The doctrine "serves to reduce the amount of damages to which a plaintiff might otherwise have been entitled had he or she used all reasonable efforts to minimize the loss he or she sustained . . . ." *Hopkins v. Silber*, 141 Md. App. 319, 337 (2001); *see Mattvidi Assocs. Ltd. P'ship v. NationsBank of Va., N.A.,* 100 Md. App. 71, 89 (1994) ("[A] plaintiff is not entitled to a judgment for damages for a loss that he could have avoided by a reasonable effort.").

That said, Grantsville's belief that "The claimant has the burden of proving that they took all reasonable efforts to rent or replace the effected vehicle or item" is an incorrect statement of the law. *See Ladd*, 2018 WL 3388407 at *13 ("The burden of proving that a plaintiff failed to mitigate its damages is on the *defendant*.") (emphasis added); *Cave*, 190 Md. App. at 96 ("[T]he burden is necessarily on the *defendant* to prove that the plaintiff failed to use 'all reasonable efforts to minimize the loss he or she sustained.'") (quoting *Schlossberg v. Epstein*, 73 Md. App. 415, 422 (1988)) (emphasis added).

---

[7] Brave argues that Grantsville waived any argument regarding mitigation of damages because Grantsville did not plead failure to mitigate damages as an affirmative defense in its Answer. (ECF No. 60 at pp. 15–16). However, Maryland law, which governs the substantive issues in this case, does not regard failure to mitigate damages as an affirmative defense that must be separately pled. *See Schlossberg v. Epstein*, 73 Md. App. 415, 421 (1988) ("The doctrine of minimization of damages is not a defense to a plaintiff's cause of action . . . rather, it is a disability on (or a 'no right' to) recovery of reasonably avoidable damages.") (quotation omitted). Nor does federal law, which governs the procedural issues in this case, require that mitigation of damages be pled as an affirmative defense. Fed. R. Civ. P. 8; *see Nat'l Credit Union Admin. v. First Union Cap. Mkts. Corp.*, 189 F.R.D. 158, 162 n.4 (D. Md. 1999). Moreover, Grantsville did raise this issue in its Answer. *See* (ECF No. 6 at pp. 3, 5).

Beyond the burden of proof however, the question of whether a plaintiff took reasonable steps to minimize their losses is "ordinarily a jury issue." *Schlossberg*, 73 Md. App. at 423.  Even where "the facts upon which the resolution of the issue depends are undisputed," summary judgment is inappropriate in this context where "more than one inference as to the reasonableness of [a plaintiff's] efforts to mitigate damages may be drawn from those facts." *Id.* at 422–23; *Ladd*, 2018 WL 3388407 at *12 ("Whether or not a plaintiff took reasonable steps to mitigate its losses is a question of fact.").  The Court finds that there is a genuine dispute of material fact regarding whether Brave took reasonable steps to mitigate its losses and is therefore entitled to the damages it seeks for lost profits.  Grantsville set forth specific factual allegations that Brave failed to buy or lease additional trailers to minimize the losses Brave incurred while Grantsville detained the trailer it recovered at the scene of the accident.  (ECF No. 59 at p. 6).  Brave conceded as much but counters that it did attempt to mitigate its damages by submitting the above-mentioned insurance claim to Grantsville and by engaging in multiple attempts to secure the release of the trailer and cargo amicably.  (ECF No. 60 at pp. 15–16).

Viewing these factual assertions in the light most favorable to the non-moving party, this Court cannot conclude as a matter of law that Brave's actions constituted reasonable efforts to mitigate the lost profits it incurred by virtue of being unable to use the detained trailer.  Brave posits that each of its trailers produces an average of $1,555.52 profit per week, which Brave was unable to capitalize on while the trailer was in Grantsville's custody.  (ECF No. 45-1 at p. 11).  Brave also maintains that this ongoing dispute led Veritiv to issue a Freightguard Report detailing the dispute, which in turn caused transportation brokers to discontinue doing business with Brave.  *See, e.g.*, (ECF No. 45-1 at pp. 21–25; ECF No. 60 at p. 16; ECF No. 45-3; ECF No. 45-21).  Thus, Brave requests damages of $64,709.12 in lost profits as of June 14, 2023.  Even though Grantsville

does not oppose the accuracy or calculation of either of these amounts, it does raise a genuine dispute over whether Brave may reasonably be entitled to these lost profits by failing to buy or lease alternative trailers to conduct its business and thereby mitigate these losses. Accordingly, summary judgment in favor of Brave for lost profits resulting from Grantsville's detention of the trailer and cargo is **DENIED**.

The Court finds that Brave's other requested damages may be awarded as a matter of law, though. First, Brave elects a judgment equal to the value of the trailer, $15,000.00, and cargo, $47,950.00, in lieu of return of the trailer and cargo, for damages on its detinue claim. (ECF No. 45-1 at p. 21; ECF No. 45-3 at p. 2). Such an award is available under Maryland Rule 12-602(d)(1) and Grantsville did not oppose Brave's assertions that these amounts were accurate and proper for recovery in a detinue action. Second, Brave requests damages for the "lease and insurance payments Brave Freight has been making for the Trailer while it has been in [Grantsville's] wrongful possession," totaling $5,174.00 as of June 14, 2023. (ECF No. 45-1 at pp. 21–22; ECF No. 45-3 at pp. 3, 13; ECF No. 60 at p. 16 n.7). Grantsville did not oppose Brave's request for these damages either other than broadly asserting that Brave failed to mitigate its damages. Both of these types of damages were necessarily incurred by Brave regardless of its mitigation efforts because they resulted from Grantsville's refusal to return the trailer and cargo in light of Brave's repeated demands. In other words, even if Brave attempted to mitigate its damages by buying or leasing an additional trailer as Grantsville suggests Brave should have done, Brave nonetheless would have incurred these damages because Grantsville unjustly refused to return the trailer and cargo to Brave. Accordingly, Brave's requests for damages resulting from its detinue claim is **GRANTED** to the extent that Brave may recover the value of the trailer and cargo, totaling $62,950.00, under Md. Rule 12-602(d)(1) and the value of the lease and insurance payments Brave

has made on the trailer while the trailer has been in Grantsville's wrongful possession, totaling $5,174.00 as of June 14, 2023.  Brave may submit an affidavit within 30 days of this order specifying any additional lease and insurance charges it has incurred between June 14, 2023, and the date of this Memorandum Opinion for the Court to include in the final judgment.[8]

### IV.    CONCLUSION

For the foregoing reasons, Brave's Motion for Summary Judgment (ECF No. 45) is **GRANTED IN PART** and **DENIED IN PART**.  The Court's rulings regarding damages should not be viewed as foreclosing Grantsville's ability to recover damages under either a theory of breach of contract or quantum meruit.  Rather, the Court awards damages to Brave for the value of the property under Maryland Rule 12-602 and for the undisputed damages incurred by Brave resulting from Grantsville's post-demand retention of the trailer and cargo without foreclosing that Grantsville may recover under a theory of breach of contract or quantum meruit for the services it provided before Brave demanded return of the trailer and cargo.  A separate order follows.

Date: September 26, 2023                                          /s/
                                                                  J. Mark Coulson
                                                                  United States Magistrate Judge

---

[8] Because the Court awards these damages on Brave's detinue claim, it declines to award the monetary damages requested by Brave on its conversion claim because, as Brave is aware, it is "not entitled to double recovery."  (ECF No. 45-1 at p. 27); *see also* (ECF No. 60 at p. 16).